The next case on our call this morning is Agenda Number 9, Case Number 104-378, Rodney J. Barth v. State Farm Fire and Casualty Company. Mr. Adami, are you ready to proceed? May it please the Court and Counsel, my name is Paul Adami. I represent the Plaintiff Appellant, Rodney Barth, who I will refer here to simply as the homeowners I did in my brief and referring to the defendant as simply the home insurer. The question presented in this case is whether or not an insurance company, particularly a casualty insurance company, can avoid a policy based upon misstatements by an insured that were seasonably corrected. It is our position that the insurance company must prove that it met all of the elements of fraud, including reasonable reliance and injury, and we rely upon the cases cited in the brief, including A&A, Truck Exchange, McFadden, and the Indiana case known as Graham. Very briefly, the salient facts of this case involved the homeowner who was disabled by polio but highly educated and had an M.S. degree. He relied on others for transportation and he became involved with one William Penn, who was a taxi driver, and he depended upon him for transportation. After that relationship began of Mr. Penn driving the homeowner's car, the homeowners began to suffer financial problems, and it was then determined after the fact that there were cash advances made by Mr. Penn totaling $3,200 on a Bank of America Visa and there were $4,000 in purchases on an American Express card. Apparently, it was the theory of the home insurer in this case that Mr. Penn colluded with my client, the homeowner, to burn his house, despite the fact that my client, the homeowner, had a net worth of $70,000 and that included $30,000 in liquid assets. So the insurance company posits then that to pay his shirt and disputed credit card debt, the homeowner would have burned his home down, upon which he would have depended, including the ventilator that he used that was destroyed in the house. So instead of investigating the claim of the involvement of Mr. Penn, the home insurer concentrated on a case for misrepresentation on the American Express card, despite the fact that he produced a credit report listing that American Express card to the home insurer in August before the examination under oath in October. The insurance company in this case claims that it was misrepresented to. It was later determined after my client had received the statements that he saw that, in fact, the credit card was overdrawn and he so stated at the examination under oath. Similarly, on this item of the satellite TV, he stated in June that it was already shut off. As to the mortgage, he stated that he thought he was current because he had made actually overpayments in December and January and he had given cash to William Penn to pay the May payment that was due. We're involved here with a defense based upon the fraud provision in the policy and it states that this policy is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented a material fact or circumstance relating to this insurance, whether before or after the loss. Noteworthy is that the policy language does not define misrepresentation. It does include language of intent and materiality, but it does not otherwise define misrepresentation. There is no statement in that provision that misrepresentation is to be defined as not including the elements of reasonable reliance and injury. And if the home insurer wanted to avoid those elements, I would suggest that they could have easily stated so. And so what your instruction did you submit to the did you submit regarding this issue misrepresentation of the plaintiff presented instruction number seven and what was labeled as his 10. Number seven discussed what the elements were and mentioned reliance to the detriment of the insurance company and the instruction number 10 asked that the jury consider whether or not the insurance company could reasonably rely. Those instructions were not given and over. I'm sorry, those instructions were. Not given. And then instructions were given over the objection of the homeowner that did not include the elements of reasonable reliance. Mr. Adam, I hear the closet issue merely referred to intentionally concealing or misrepresenting material facts, right? Yes. And as to whether these facts were material, you'd agree that that was a question for the jury, wouldn't you? Yes. And there's is there any basis to disturb their determination of material? This fire was intentionally set. That's not an issue. Right. We did not object in this appeal to the issue on materiality. I think potentially any time you ask questions about one's financial situation, I think they can become relevant to the inquiry because often the motive for setting a fire is financial. So we did not quibble with the materiality instruction that was given and made no objection to it. But we did object to the fact. Well, I guess what I'm getting at is, well, I don't see, well, I'm going to ask you, why would the instruction have to contain all of the elements of common law fraud? The policy involved in the ANA case had a provision about defrauding the insurer, right? Yeah, I think it was similar, yes. Well, defrauding the insurer, I mean, I'm saying there was some difference, right, in the ANA? Well, I don't really think so. The title of this clause was concealment or fraud. And I think the issues were the same. And I make the point that the subject clause here does not define misrepresentation. It uses the word intent. It uses the word material. But it doesn't define misrepresentation. In other words, can something be a misrepresentation that if it wasn't relied upon or it didn't affect the investigation, in other words, there was no injury suffered? That's why I go to language. The clause merely referred to intentionally concealing or misrepresenting material facts. As to whether those facts were material, that was a jury question. We have established that. The fire was intentionally set. And information about plaintiff's financial condition was certainly relevant. I don't even think you dispute that to determine whether a plaintiff had a motive to set the fire. Couldn't the jury just make that determination on that clause without needing somehow justifiable reliance on the part of the carrier? Unfortunately, the jury wasn't informed that any statement made by the plaintiff could be construed as being a misrepresentation. You could make a trivial statement that for whatever reason was not true, and thus it possibly could become a misrepresentation under the language of this clause. For example, he says, my house was blue. Well, the house wasn't blue, but is that something that was material? Probably not. The concepts of materiality and reliance are somewhat interwoven, and that materiality is often defined as something that someone can rely upon. Does that argument, Mr. Adami, go to the concealing language as well as the misrepresenting language? Doesn't it say concealing or misrepresenting material facts? Yes. I don't believe in this case this was so much a concealment case. But certainly, again, if someone concealed something like they had a dime in their pocket at the time of the fire, I don't know that that would be necessarily something that an insurer could reasonably rely upon to deny the claim. So it's our position here that we need the elements of reasonable reliance and injury here to protect against overreaching on this materiality issue and to prevent insurance companies from claiming that they were misled, even though in no sense could they have reasonably relied upon it. And I cited the Doe versus Drilling case, which in turn cited Justice Posner in the Seventh Circuit, where he says the requirements of justifiable reliance backstops the jury's determination of actual reliance. It is on this theory that a person who plays ostrich may be held to act deliberately to know and not to want to know. So that is some protection against someone claiming that they were defrauded when, in fact, they had no reason reasonably to rely upon that. So for that reason, we believe that there is no reason here as a matter of policy why the clause in this case should not be read as requiring the elements of proof of reasonable reliance and injury. The insurance company would have great economic power, and it cannot be said that they would be subject to these types of claims, because they investigate these claims to a high degree, and thus they can little be said to be subject to and be taken advantage of by misstatements. But rather, I think the protection to the insured should be that any statement that he makes has to be reasonably relied upon, and it has to in some sense affect the investigation, the concept of prejudice or injury. As I said, otherwise, the insurance company can seize upon anything that the insured may have stated at one early time. And this is particularly also true that in this particular case where he did not mention things at the initial recorded statement, but then later after he found out the truth of the matter, he on his own made corrections such as he furnished the credit report. How can someone say they reasonably relied upon his earlier statement that he didn't mention a certain credit card when he gives someone the credit report that lists all the debts and the amounts? In fact, I think this case presents a situation where the insurance company abused this fraud procedure, because having in front of it the credit report, it does not ask any question of the insured at the examination to Roath, didn't mark it as an exhibit, and yet it knew about it. It then sits back now and claims, oh, I was defrauded because you didn't mention that particular credit card under the examination under Roath. Well, they had the information, can they say to have reasonably relied on the statement, but looking right at the credit report, they knew, but yet they didn't want to ask him. They rather would try to trap him to say, well, if he forgets to mention that credit card, then we can raise this fraud defense, when in fact they have no reason to rely upon that statement because they have in front of them the subject credit report. So in its simplest form, this court has to decide whether materiality is enough or whether reasonable reliance has to be instructed to the jury, and then they have to find that there is reasonable reliance as well as materiality. Yes, that's our position as well as I think we're also claiming that they relied to their detriment. In other words, somehow the investigation was harmed or in some way that they took some action that they relied to their detriment. We're not claiming here that the insurance company would need to pay a claim to be subject to any requirement of damage because I think damage is only an element in a claim to recover back an item. It's not an element in raising fraud as a defense. So we're not claiming that the insurance company has to actually pay a claim before it can raise the fraud defense. Now, your argument is predicated, to make it clear, not on the particular phraseology in the policy provision about when the policy is void, but on the totality that comes under the concealment or fraud provision. Is that correct? Well, I'm not sure I understand your question, Justice. The provision says policy is void if the policy is intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss. It doesn't talk about reliance. No, it doesn't. But it does come under the section of the policy talking about concealment or fraud. Is that where you come up with the? Well, there's two things there, I think. One, it does say fraud, and fraud is defined as including the elements of reasonable reliance. The second point is that though it includes the elements of intent and materiality, it does not define the word misrepresented. What is misrepresentation? Well, misrepresentation has to be an item that is false, known to be false, with the intent to induce, and you have reason to rely upon that statement. I think reasonable reliance has always been a backstop to any claim that someone said that they, something was concealed from them or something was misrepresented to them because everyone has some duty to investigate, particularly insurance companies, and they cannot sit back and say someone made a misrepresentation to me, and yet they could not possibly have reasonably relied upon that, and for the reasons that we stated here, we believe that a homeowner has or should be given the opportunity to seasonably correct any misstatements, as this homeowner, in fact, did. We talked about the Visa card. We talked about the American Express card. So I would define reasonable reliance in terms of that the insurance company cannot rely upon any statement made before the homeowner is given some opportunity to seasonably correct, and in fact, in this case, at the examination, which was the final stage, sworn statement, that's when the homeowner said, you know, I gave you my credit report, and he says as to the Bank of America Visa, I was wrong when I told you that before. I've now found out that card was overdrawn because somebody took $3,200 worth of cash advances. So I submit that the reasonable reliance element must be present, and I would argue that it's included within the phrase misrepresentation because it's not otherwise defined. I think I've covered those issues involving this issue of fraud. I will also mention that there was an IPI instruction that included reasonable reliance as an element, and that's in the 700 series. Counsel, if I may, you only have a few minutes, and you are touching, I think, which is one of the claimed areas of forfeiture. It may be of some value to the court for you to address that. Yeah. Well, as I think I said earlier, insurance policies should be construed against insurers to avoid forfeiture. So I think you have that rule of construction that forfeiture should not be granted unless it's absolutely clear, and this is the language of the policy that was provided. I also did make some arguments about recusal. I only have a few minutes. We're not making any claim there was any actual prejudice here. Did you offer a substitute instruction in this case? Oh, going back, yes. We offered, as I think Justice Freeman asked me, instruction number seven, which defined the elements including. . . I heard that in the back. Instruction number 10, yes. Thank you. Thank you, Mr. Ademeyer. Mr. Reagan? I think the question was substitute instruction. Right. I'm sorry? I think he asked whether you offered any substitute instruction after seven or 10. . . Did you offer instruction with the language reasonable reliance in it? Initially, yes, and that was rejected. Instead, the trial court gave the instruction offered by the defense. Okay. Thank you, Mr. Ademeyer. Mr. Reagan? Thank you, Justice Thomas. May it please the court, Mr. Ademeyer. Hi. My name is Mike Reagan, and I represent the defendant, State Fire and Casualty, in this case. This is a case in which the law is settled. The question under consideration is one of fact. The jury was properly instructed, and the evidence was sufficient. Mr. Reagan, let me just pick up on something the appellate said. I was concerned about how you were harmed by the alleged misrepresentations, and he said something about you alleged you did some things because of the misrepresentation that cost time and money. What were those things, if that is true? Well, we have not made a specific claim in this case that we were out money by additional time or having to do anything else. I don't believe that that would be an accurate statement of what our position here is. This policy provision, and that's what we're dealing with. We're dealing with a policy provision and not with a common law fraud concept. This policy provision is designed to protect the process. It is separate and apart from arson. It is separate and apart from common law fraud. And going back at least as far, but it goes beyond that, to the U.S. Supreme Court case of Claflin in the late 1800s. They talk about this notion that in the course of investigation, the obligation of the insured pursuant to this clause is to be truthful in all things. And as I'll develop in the argument. Your harm is that the process was violated. Pardon me? Your harm is that the process was violated. The harm is that the, yes, that the process was violated, that the insured was not truthful and misrepresented and in fact concealed some things in the course of the investigation. And the law here, and it's one of the great things about the privileged work that I get to do, is to learn new areas of the law all the time, is that the law is very specific here. The materiality is the test and not reliance and not damage, but rather materiality. And materiality is based upon the concept of potential prejudice, as Judge Easterbrook wrote, sitting as a trial court judge, which we've cited. And so it is potential prejudice. And it is very, very clear in the case law that materiality is measured by the veracity of the statement and its relevance and its materiality at the time that it was made. And that it is very clear under this long standard law all around the country that materiality is not to be determined after the fact to look at whether the statement ultimately turned out to be significant in the ultimate disposition of a claim. And we really have put that in spades in the brief that that's not how you look at it. You don't stand here and say, okay, at the end of the day, was there reliance, was there damage, et cetera. You look at the process and you determine whether at the time that the misrepresentation or concealment occurred, whether it was material at that time, whether it was relevant to the inquiry, and all of these things clearly were. And the courts also say that when you have a fire of suspicious circumstances, and this is far beyond suspicious, there's no doubt that this fire was set and that the plaintiff was acting suspiciously even at the fire scene, that in those situations the insurer is particularly entitled to pursue a broad defense. So the plaintiff can win in this case only by asking this court and having this court change the law to say for the first time that an insurer relying upon this section must prove both actual reliance and actual damage or harm, if you will. In this case, this boils down to whether the notion of misrepresentation in the world of insurance is different from the common law form of misrepresentation. I think the charge in the appellate court held that it is, but Cook, in citing to A&E as authority, it appears felt that it is not. Is that the basis, the difference between the world of insurance and common law? Absolutely. Absolutely there is a difference. And why should there be a difference? Because this is a policy defense based upon the wording of the policy, and it is not common law fraud. Now, Mr. Ademeyer said something that was very important and very useful to us. He said it in his brief and he said it here, that the concept of materiality really is a substitute for his missing elements, what he says are the missing elements of reliance and damage. And A&A is not at variance with Pissarro. And it's very important. In A&A, and I'm sort of out of track here, but I'd like to address your question, Pissarro got it exactly right. Pissarro is a well-written opinion, and every time I read it, I see more and more in there that I didn't even see the first five times I read it. And A&A is also a fine opinion. In A&A, the jury was told almost nothing by way of instructions. It merely said that the policy, there was a policy provision that the plaintiff couldn't recover if there was a fraudulent misrepresentation. Fraudulent misrepresentation wasn't defined in any way. Nor was the jury told that it had to find that the statements were material. And, of course, that jury was not instructed on the meaning of materiality. So the instructions in A&A were absolutely and completely deficient, and there's no question that that case had to be set back for a new trial based upon proper instructions. The comparison between instructions in that case and the instructions in this case is truly night and day. Now, we were required. Now, the A&A did have, as part of those instructions, a reliance provision, right? What it was, my recollection of how the word reliance resides in the A&A opinion is this, is that the proposed instruction that was given by the plaintiff in that case would have included reliance and damage. But the trial judge did not give it. And the opinion in A&A says that this case has to be sent back and that the jury has to be instructed on materiality. And in dicta, and there's really no doubt in my mind that it was simply one sentence in passing, the court said that, for instance, or for example, one of those two words, that if the plaintiff's proposed instruction had been given, then the concept of reliance would have been given to the jury at that point. But they never mandated that that instruction would be given on remand, right? Absolutely they did not. And this is the case. I mean, it's quite clear. I mean, it was very much in passing, which is part of the Latin definition of one type of dicta, as Justice Freeman has written at length about, that it was very much in passing. And they just say, well, if that instruction had been given, there would have been something about reliance. But in A&A, when the opinion is carefully read, A&A is all about materiality, and it is not about the missing elements, which he claims here. This jury had to find a lot against the plaintiff in order to recover under the instructions. And this, and we've put, by the way, the verdict form in the appendix for our brief. It was a special verdict form. And so the jury had to go through and check off question by question by question. Did you find this? Did you find that? Et cetera. And so by clear and convincing evidence, not just by preponderance, they found that the plaintiff concealed or misrepresented facts, that those facts were material, that the misrepresentations were made to stay firm, and that they were made knowingly, willfully, and with intent to deceive. Now, this jury also was given a recognized definition of material by instruction, our defendant's instruction number nine, which is also in our appendix. And I won't go through the whole instruction, but. I hate to cut you off again. Please. But I ask, what is the basis for the difference in an insurance company being afforded this advantage on misrepresentation? Is there any basis in law? Well, I would. Yes. A&E does not give the insurance industry that advantage. Well, I think that I would be very comfortable with the A&A opinion and with the A&A court. Could you just give me a short, just briefly, what the basis for the difference in treatment? The basis for the difference is this. That we are, we start with the premise that we've come before the court, not because we have asserted common law fraud, but because we rely upon a particular policy provision. This is a contract case. This is not a fraud case. This is a contract case. And the language. Misrepresentation doesn't apply? Well, the policy language says that if you misrepresent or conceal, that you do not have the right to recover under the policy. Now, it's important, we are not inventing this area of the law for the first time here today. Fire policies are somewhat unique, although there's a difference, as Justice Thomas pointed out, between the A&A policy and this, in some particulars. A&A talks specifically about defraud. But nonetheless, fire policies are standard. And, in fact, fire policies have to be approved and in standard form by the state. And the New York fire policy, historically, has been the source of all the policies in the law in this area. And so when you go back, I know that you're asking me to tell you why you should believe me, that there is a difference between the policy and common law fraud. And the answer is, it has always been thus. And it is quite clearly the law across the country. And the reason is that we are dealing with policy language and not with common law fraud. Now, there is an additional reason why you cannot force this process into a common law fraud situation. And that is because how else would you get harm except to say that, well, there's only harm, there's only reliance, if the fire insurer pays the policy? Now, Mr. Adamai said at the end, he said, well, we're not saying that. But he has to be saying that. Because where else would he come up with harm or reliance which would be sufficient to satisfy these elements, which he wants this court for the first time. And there has been no opinion which he's offered to you which has ever permitted that to be the case. Plaintiff in his brief says that we say that Claflin's binding on the court. We don't say that at all. It's merely extraordinarily persuasive. Pissarro cites Claflin at length, as do many cases around the country. So the debate here really centers around whether Pissarro is correct or not. Mr. Reagan, can you comment? It seems to me there's a dispute between you and Mr. Adamai as to whether they tendered alternative instructions. Because you do have a little bit of a forfeiture argument in there somewhere. I do. And here's they did tender one. Now, the reason I wrote in the brief is that it is nowhere in the record. And it's my job, even though I wasn't a trial attorney, the trial attorney's dead, the appellate lawyer has quit the practice of law and moved out of the state. But it's my responsibility to know every word of this record, which I did. And when we wrote the brief, I mean, there is not the slightest suggestion anywhere in the record that the alternative instructions were offered. And, in fact, with respect to the materiality instruction, which is our number nine, which is really the key, I mean, I think the fact because materiality was instructed upon here, then I think this case is over. But the trial judge specifically asked Mr. Adamai, do you have any objection to this instruction number nine? And he said no. Now, he had an objection to a small part of it, which has nothing to do with the issues before the case. Now, what happened after that is that Mr. Adamai filed a motion with the trial judge, which was heard two years after the trial, saying, look, judge, you know that I offered these instructions. And the trial judge said, yes, they were offered. And so the record has been supplemented to now include those tendered instructions. So you're dropping the waiver argument? Well, here's the situation. The precedent from the court, from this court, and it's clear from the appellate court, is that the transcript of the instructions conference, whatever that means, I mean, there's usually a series of instructions conferences, has to affirmatively demonstrate that the instruction was tendered, the competing instruction was tendered, and that specific objections sought to be relied upon on appeal were made. So the question is, am I dropping it? I'm not dropping it to that extent, because the record must affirmatively show that specific objections were made, and in this case were to the materiality. But, yes, I absolutely concede that the record now shows that those two tendered instructions were made. So it's really a matter of housekeeping for this court to determine what the outcome ought to be, and I didn't intend to further argue that point this morning. Mr. Reagan, just to make sure we're clear on that, you're not making or haven't made a challenge to the bystander report that the judge sent? I have not. Judge Kelly said it happened, and I said, yes, sir. So that's the state of the record. May I bring you back to something you started on before? Absolutely. You were starting to talk about materiality, and either the policy language or the instruction in defendant's instruction number nine. Yes. How does that, because you said you didn't want to go through the whole instruction, because it's very lengthy, but how does that tell the jury what they're to consider on materiality in terms of what's important in this case? Right. The instruction that was given here finds support in Passero and in Claflin,  and it says things like this. It says a statement or an action of the plaintiff is material, or whether materiality exists or not depends on whether a reasonable insurer would attach importance to it at the time it was made. So what you see is the instruction begins to talk about an objective standard as opposed to, well, did this particular insurer think it to be important. Secondly, the reasonable insurer would attach importance to any fact that would affect the insurer's action or attitude regarding the claim. That freestanding is a very important thing, and materiality is, is it the type of thing which would affect what a reasonable insurer would think or what its attitude would be in looking at the claim. And misrepresentation is material if it is calculated to mislead or deflect an investigation in any area that could be relevant at the time of the investigation. And Mr. Ademaye, in discussion with the court, talked about the financial status of an insurer as being very important. And then lastly, the jury was instructed that a finding of materiality, quote, does not depend on whether the misrepresentation relates to a matter that ultimately proves to be significant in the insurer's final disposition of the claim. Now, there was no challenge, clearly, in response to your question, there was absolutely no challenge to any aspect of this instruction other than the general statement that Mr. Ademaye didn't think apparently so. I mean, the bystander's report says that there was an objection to the giving of an instruction on materiality. But there is, even in the bystander's report, no challenge to the language of the statute, or of this instruction. And where it came from, and we've cited in the brief, is a federal trial court opinion, LaSalle National Bank from the Northern District of Illinois. Again, only a trial court opinion, but there the judge said, look, we've put a lot of work into this, and this appears to comply with the PECERO. And then when you read PECERO and the authority cited in it, when you read Claflin, you see that each of these paragraphs of this materiality instruction find sources in those opinions. And so that is the definition of materiality. And so the concept is, is it the sort of thing that would affect an insurer's attitude at the time the statement was made, not after the fact? Because if you look after the fact, if we have to come here now and say, okay, when it's all said and done, here's the harm, then that just flies in the face of what the law is in this area, which is that the insurer is entitled to truthful statements at every stage of the process. We've talked about PECERO, and PECERO, again, builds on that concept so that it's, that the materiality of statements is not to be judged by what the facts later turn out to be. And so the concept of it, at the end, I see my time's up. Is it a fair statement that your briefs would indicate that on the recusal issue that your basis is just that it's de minimis, that judges would have the same homeowner's insurance as a company before them? Is that the gist of your response? Absolutely. If I can just say one word, a couple sentences I should say about that. The Code of Judicial Conduct states clearly that ownership in a, excuse me, being insured of a mutual company is not an economic interest. It is only de minimis. It is not an economic interest. Then the disqualification rule says you have to disqualify yourself if you have an economic interest. Well, we have a judicial declaration that it is not an economic interest. So all that they can argue is that whether the judge also has to recuse herself in a situation where the impartiality could be reasonably challenged. And so when the rule itself says that this is not grounds for disqualification, then how can it be that saying the same thing would be a reasonable basis for challenging somebody's impartiality? I thank the Court very much. Thank you, Mr. Reagan. Rebuttal, Mr. Ademaye? I notice you didn't mention just at the end you talked about the recusal. Are you persisting in that argument or do you? Yes. We are not claiming that there was any actual prejudice. Rule 63C says that a judge shall disqualify himself in any proceeding in which the judge's impartiality might be reasonably questioned, including but not limited to instances where they go on and describe economic interests. We're not proceeding on any economic interest theory at all. The fact that it was a mutual policy has nothing to do with this. The point is that if you do business with someone, can the litigants know about that and can the appearance of possible impropriety actually harm the system? And that's what we're concerned about here is that we have someone doing business  And in this particular case, of course, with this actual insurance company. So whether it be, as I made the point, a barber, accountant, lawyer, or whatever, should a judge sit on a case where he's doing business with that person, again, be it an insurance company, barber, or whatever, and I think it advances the quality of the judiciary that this disclosure should have been made up front so that my client could have filed a motion for substitution at that point without cause. I won't discuss that any further, but I did want to discuss this item. In no sense have we ever conceded that materiality takes over from reasonable reliance. What we have here, however, is that there is no distinct line between materiality, reasonable reliance, and intent. They often blur because one can talk about whether a statement was made to intend to defraud somebody, whether the statement was sufficiently material that a party could rely upon it, and the question of was it reasonable reliance. And again, we make the point that the insurance company should not be able to claim that they relied on a statement if, in fact, the litigant, in this case my client, was given the opportunity to and did, in fact, correct the misstatements because at the examination and arose, he explained the American Express card by having given the credit report. He explained the Bank of America Visa because he explained I was wrong, I didn't have this bill before. So how can they claim that they reasonably relied? Reasonable reliance is a backstop against someone claiming that they relied when, in fact, they had no right to rely because it is a test of reasonable reliance, especially where here the insurance company had a duty to investigate. Now, we read the ANA opinion differently. We read that opinion as saying that the jury should have been instructed on reasonable reliance, and there is a quote in the opinion that the jury should have been instructed upon reasonable reliance. I don't think that can be simply dismissed as dicta. There is a statement in the opinion the jury should have been instructed upon reasonable reliance. And on the injury point, again, we're not saying that the injury. What did the appellate court do there, Mr. Adamai? Didn't they talk about ANA and talk about the common law threat, that there was common law fraud, or maybe they talked about the defrauding provision in ANA? Well, Justice Cook, in his dissent, agrees with the position I'm taking here, is that the appellate court did say that the jury should have been instructed as to reasonable reliance. So we believe that answers that question. And what we're saying here is when you get- What did the majority say vis-a-vis Pesero? They did draw a distinction between ANA and Pesero, didn't they? Well, you know, every case is different on its facts, obviously. And we may not know all the facts reading an opinion, so it's difficult for us to determine, well, what were the facts in Pesero? But Pesero more or less assumed that this was something that the insurance company had every right to rely upon. As I recall, it was a proof of loss case. So our position in these cases is if someone submits a proof of loss, the insurance company has it reasonable to rely upon it. It's material. And if you submit a proof of loss to the insurance company, it seems to me that they're prejudiced because they have to assume that this is what they're proceeding on. Likewise, in examination under oath, we assume that, and we cite the Graham case out of Indiana, that was also cited by Little Fence, that at the examination under oath, once that's given, the insured has had an opportunity to correct any misstatements. And after that point, the insurance company has every reason to rely upon it and can reasonably rely upon it and thus act upon it and suffer prejudice. So we define reasonable reliance here as whether or not the insured was given and was, in fact, seasonably. He gave seasonal correction to the prior statement he made. I've indicated about the credit cards before. So the test should be reasonable reliance, but up to what point? Because many times there could be a misstatement of some innocent fact that the insurance company says, you know, we're relying upon this, but yet then the insured seasonally corrects that statement. So can the insurance company sit back and say, I was defrauded here when the insured seasonally corrected the statement, and that is then the definition in these insurance cases of reasonable reliance in terms of did the insured make a correction, seasonally correcting any prior misstatements. I was very interested in Justice Stavros' question. I didn't hear, I don't think he got an answer. How did the appellate court distinguish Passero from ANA in its opinion, if you don't? As I stand here, I don't think I can answer your question. Other than I recall, I thought Passero was a proof of loss case where the reliance was not really an element of in dispute in this case, because if you give a proof of loss statement to somebody, I think the insurance company has every right to rely upon it. So that was not an issue. As I recall, Passero had something more to do with materiality. Well, they contrast ANA with Passero and then end up with here, and this is the appellate court here. However, the policy language at issue did not invoke fraud in the present case as a basis for avoiding the policy, and defendant's second affirmative defense was not based on a claim that plaintiff attempted to defraud defendant. Thus, no proof of fraud or detrimental reliance was required. Instead, defendant had to show plaintiff misrepresented or concealed the material fact to avoid the policy. The instructions given by the trial court adequately informed the jury of the law on the issue that was decided given the evidence presented. We find no abuse of discretion. So that's what I was asking. They do distinguish. They talked about Passero, then they talked about ANA, and they said in this case, the policy language did not invoke fraud as it did in ANA. Well, I may have misunderstood the question. The answer is that the appellate court ignored the clause, and Justice Cook pointed this out in his dissent. The clause in question is entitled fraud or concealment. So it does involve fraud, and thus all the elements of fraud need be proven, and there is no reason to exclude, no public policy reason whatsoever to exclude reasonable reliance from an element that the insurance company must prove. In fact, there's an even stronger reason, it seems to me, in insurance cases, to require reasonable reliance because of the spirit economic power of the insurance company. They can say, well, you said this, and we're going to rely upon that. I'm sorry, we're not going to pay the claim. And the insurance says, well, you know, I want to correct that statement, and he makes all those corrections on or before the examination under oath. So how can the insurance company rely upon some initial statement, however trivial or mistaken, where the insurance company knows this is not really right, as in this particular case, they knew what the exact status was of the mortgage because they were dealing with the mortgage company. How can they stand back and say, well, we reasonably relied upon this statement that you said you thought you were current on your mortgage, when they, in fact, knew exactly what was happening. He hadn't paid the May payment as of June 3. He hadn't made the payment for June. So they knew those items, and we believe that reasonable reliance should be defined in terms of whether or not the defendant can ignore a seasonal correction. Thank you. Thank you, Mr. Ademaye. Thank you, Mr. Reagan. Case number 104-378, Rodney J. Barth v. State Farm Fire and Casualty Company, is taken under advisement as agenda number nine.